IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH AMES,

    Plaintiff,

    v.

                        Civil Action No.:  ELH-22-0808

CHRISTOPHER SMITH, *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Joseph Ames, a Maryland prisoner, filed a civil rights lawsuit pursuant to 42 U.S.C. § 1983. The suit arises from a serious assault committed against plaintiff by other inmates at Maryland Correctional Institution Jessup ("MCI-J"). ECF 1 ("Complaint"). Ames alleges that while he was housed at MCI-J, defendants failed to protect him from the assault, in which he was stabbed multiple times. *Id.* The court afforded Ames an opportunity to supplement his Complaint (ECF 3), which he did on May 9, 2022. *See* ECF 5 ("Supplement"). I shall consider the Complaint and the Supplement collectively as the Complaint.

By Memorandum and Order of June 16, 2022 (ECF 7, ECF 8), the Court dismissed the suit as to the State of Maryland; the Maryland Department of Public Safety and Correctional Services ("DPSCS"); Robert Green, the Secretary of DPSCS; and "ALL officer of [MCI-J]."  The remaining defendants are Warden Christopher Smith; Lt. Oluwole Olowe; Correctional Officer ("CO") II Derek Amadi; and CO II Samuel Oluwatayo. *Id.*

The remaining defendants have moved to dismiss the suit or, in the alternative, for summary judgment (ECF 30), supported by a memorandum (ECF 30-1) (collectively, the

"Motion") and multiple exhibits.[1]  They argue: 1) that Ames has failed to satisfy the minimum requirements for a claim, 2) that the defendants did not act with the requisite deliberate indifference required to amount to a violation of Ames's constitutional rights, 3) that the defendants cannot be held liable in the absence of personal participation, 4) that the defendants are entitled to immunity under the Eleventh Amendment, and 5) that the defendants are entitled to qualified immunity.  ECF 30-1.

Ames opposes the Motion.  ECF 40.[2]  And, he has submitted an "Affidavit of Inquiry Motion to produce Documents," which the Court will construe as a Rule 56(d) affidavit for discovery.  ECF 39.  In addition, plaintiff has annotated certain defense exhibits.  *See* ECF 41.

No hearing is necessary to address defendants' Motion.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons stated below, I shall grant the Motion.

## I.    Factual Background

### A.    Ames's Allegations

Ames alleges that late at night on July 25, and in the early morning hours of July 26, while he was housed in a "made up" housing unit in the prison gymnasium, he was "severely stabbed." ECF 1 at 2.  Ames did not provide the year in his Complaint.  According to Ames, Officers Amadi and Oluwatayo were asleep at the time of the incident.  *Id.*  Further, Ames states that Lt. Olowe and Warden Smith are responsible for ensuring that their subordinates are doing their jobs.  *Id.*

---

[1]  Surprisingly, defendants submitted numerous exhibits collectively as "Exhibit 1."  *See* ECF 30-3.  Exhibit 1 consists of 72 pages, and it is sometimes difficult to determine when one multi-page document ends and another begins.

[2]  Ames titled his response "Affidavit Motion to Suppress Evidence."  ECF 40.  In this document, Ames challenges evidence put forth by the defendants in their Motion.  As such, the court will construe it as an opposition.

In the Supplement, Ames states that the events in issue occurred between 11:45 p.m. and midnight on July 25 and 26, 2021.  ECF 5 at 1.  Ames alleges that shortly before he was stabbed, he woke up and walked to the bathroom.  *Id.* at 2.  While urinating at a stall, Ames was placed in a choke hold.  *Id.*  Then, he was attacked from behind, choked, and rendered unconscious, so he cannot positively identify his attackers.  *Id.* at 3.  During the attack, Ames was stabbed "7 to 8 times" in his back and on the left side of his body.  *Id.* at 1.

Following the assault, Ames was "rushed" to the hospital.  *Id.* at 1.  He states that he sustained a "grade 4 laceration" to his kidney, which partially detached his bladder, nerve damage to his knee, and he had to be placed in an "induced coma" for three days following the attack.  *Id.* Moreover, he underwent surgery, *id.*, and claims he spent twelve days in the "ICU" at "UMMC-shock trauma . . . ."  ECF 30-4 at 17.

According to Ames, at the time of the attack, officers were not at their assigned location, which was about 20 yards from where the attack occurred.  ECF 5 at 2.  Instead, he states that the floor officers were asleep, "behind a wall that block their vision from the assault."  *Id.*  He also states that the officers failed to do mandatory rounds that night.  *Id.* at 3.  And, he maintains that, because the officers failed to do their job, it "gave the assailants an open invitation to do whatever they had planned."  *Id.*  According to Ames, he was injured as a result of the correctional officers' decision to "take a nap, knowing the potential danger that exist in prison, with that risk significantly higher in that gym housing unit because of the amount of violence that done already happened in that part of the prison."  *Id.*

In sum, plaintiff asserts that Officers Amadi and Oluwatayo were assigned to the gym at the time of the attack, failed to conduct regular rounds, were not at their assigned posts, and took a nap.  *Id.* at 3.  Further, he claims that Lt. Olowe "failed to properly address the issues of officers

sleeping on shift," failed to make rounds, and "knowingly ignored the facts and allowed for a [sic] unsafe toxic environment." ECF 5 at 3. And, Ames asserts that Warden Christopher Smith "is responsible for his officers and the safety of all inmates." *Id.* Ames seeks monetary damages for his claims. ECF 1 at 3.

### B.   Defendants' Response

On July 26, 2021,[3] at approximately 11:45 p.m., three inmates assaulted Ames in the bathroom of "the L-1 (Gymnasium) Dorm." DPSCS Intelligence and Investigative Division ("IID") Incident Report, ECF 30-3 at 2-10. A "Serious Incident Report" was completed. ECF 30-3 at 11. It reflects that at 11:45 p.m. that night, Officer Amadi "observed Inmate Joseph Ames…rushing to his bunk 'in a suspicious manner.'" ECF 30-3 at 11. He then "'ransacked' through a bag before proceeding to the exit door, where he grabbed a broom." *Id.* at 5; *see also id.* at 14. Plaintiff returned to the bathroom and was observed striking other inmates with the broom. *Id.*

Officer Oluwatayo called a "10-10" code for inmates fighting with weapons. *Id.* Officer Amadi ordered Ames to cease his use of the broom, but Ames initially failed to comply. *Id.* Ames eventually complied and was taken to medical for evaluation. *Id.* No weapon was recovered. *Id.* at 15.

Records reflect that between 12:00 a.m. and 12:20 a.m., all inmates involved, including Ames, were asked to provide a statement regarding the incident and all four refused. *See id.* at 16, 20, 22, 24. Ames was taken to the hospital for treatment of his injuries. *Id.* at 14.

---

[3] Plaintiff indicates that the incident occurred on July 25 and 26, 2021. ECF 1, ECF 3. However, the documentation in the record reflects that Ames was assaulted late at night on July 26, and the aftermath of the incident continued on July 27, 2021. *See* ECF 30-3. The Court will utilize July 26 and 27, 2021 as the operative dates.

Defendant Lt. Olowe later reviewed camera footage, which reflected that Ames was attacked in the bathroom by three other inmates, and he subsequently retrieved the broomstick that he used to hit his attackers. Notice of Inmate Rule Violation, ECF 30-3 at 25; ECF 30-3 at 5. All four inmates involved in the incident received infractions. *Id.* at 25, 38, 55, 29. Ultimately, Ames pled guilty to three of the four charged infractions. *Id.* at 32-36.

Ames filed several institutional complaints ("ARPs") regarding the incident. The first, dated August 27, 2021, states: "I was severely stabbed in the MCI-J gym housing unit. Due to the lack of supervision and dorm settings the officers on duty that night was not on post and surly [sic] not doing rounds per 15 min[utes.] As a result of the officers [sic] negligence and lack of awareness not being on post I was severely injured." Division of Correction Request for Administrative Remedy, ECF 30-4 at 17. This ARP was dismissed for procedural reasons, namely, not being timely filed. *Id.* at 15. Ames noted an appeal on August 30, 2021. *Id.* Because the incident was being investigated by the IID, the appeal was dismissed. *Id.* at 12.

Ames then filed a complaint with the Inmate Grievance Office ("IGO"), marked as received on October 25, 2021. *Id.* at 8. He stated that at the time of the incident, Officers Oluwatayo and Amadi "was not at their assigned post they were in the correctional officers bubble with the light out completely presumed sleep [sic]." *Id.* Ames asserted that he was injured because these officers were "negligent in doin[g] the duty that they swore to uphold especially in a dorm setting with medium and maximum prisoners." *Id.*

Amadi, Oluwatayo, and Olowe submitted declarations in support of the Motion. Decl. of Amadi, ECF 30-5; Decl. of Oluwatayo, ECF 30-6; Decl. of Olowe, ECF 30-7.

Officer Amadi states that he worked the 11:00 p.m. to 7:00 a.m. overnight shift on July 26 and 27, 2021 and was assigned as a floor officer. ECF 30-5 at 1. Correctional staff begin work at

10:48 p.m. with roll call, followed by an institutional count of inmates beginning at approximately 11:10 p.m. *Id.* During count, two officers begin at opposite ends and "cross-count" inmates, then they return to the "bubble" to compare their counts. *Id.* He states that, following the count, at approximately 11:21 p.m., he observed Ames rushing to his bunk, ransacking a bag, and rushing toward the exit door. *Id.* He recalls that he observed Ames pick up a broom and strike another inmate. *Id.* Thereafter, Oluwatayo called a code over the radio to alert staff that inmates were fighting with weapons, and "correctional staff began responding." *Id.*

Officer Amadi ordered Ames to stop striking other inmates with the broomstick. *Id.* Although Ames initially failed to comply, he ultimately stopped. *Id.* at 2. Officer Amadi issued tickets to the inmates involved in the incident. *Id.* He denies that he was asleep during the incident, noting that the incident followed institutional count, which is "a very busy and active time for correctional staff to move about the unit." *Id.*

Officer Oluwatayo confirms that he was working the 11:00 a.m. to 7:00 p.m. shift on the night of the incident, and he performed the institutional count with Officer Amadi. ECF 30-6 at 1. At approximately 11:21 p.m., he cross-checked the count with Officer Amadi and then left to go turn off the lights. *Id.* On his way to turn out the lights, he observed seven to eight inmates in the bathroom, not including Ames, and ordered them to leave the bathroom. *Id.* He turned the lights out and returned to the bubble with Officer Amadi, where he observed Ames run from the bathroom, look for something in a bag, and grab a broom before returning to the bathroom. *Id.* He then called a "10-10" on the radio to alert staff that inmates were fighting with weapons, and staff began to respond. *Id.* at 2. Oluwatayo observed Amadi ordering Ames to cease use of the broom. *Id.* He maintains that he was not sleeping at any point, nor was anyone else to his knowledge, because the time following institutional count is very busy. *Id.*

Lt. Olowe states that he worked as the housing unit Lieutenant on the night of the incident. ECF 30-7. He was in the correctional officer's area, known as the bubble, when the incident involving Ames occurred. *Id.* at 1. Olowe reviewed video footage from the incident, which reflects that at approximately 11:21 p.m. Ames was attacked by three other inmates, and thereafter, Ames struck the inmates with a broomstick. *Id.* He also avers that he was not asleep, nor were any other officers to his knowledge. *Id.* He explains, *id.* at 1-2: "It would be nearly impossible for any correctional officer assigned to the unit to be sleeping when the fight involving Inmate Ames occurred as the 11-7 shift was minutes into the shift which consists of roll call and the institutional count."

## C.    Ames's Opposition

Ames filed a document titled "Affidavit Motion to Suppress Evidence." ECF 40. In this document, Ames takes issue with some of the factual information put forth in the defendants' Motion. *Id.* He has also submitted annotated exhibits. ECF 41.

Ames challenges the time frame in which this attack occurred. ECF 40 at 1. He notes that the incident reports and notice of inmate rule violations state that the incident occurred at 11:45 p.m. *Id.*; ECF 41 at 1. He also includes notes from his examination by the medical department at MCI-J, which reflect that he was seen at midnight. ECF 41 at 2. However, he notes that in the declaration of the defendants, they indicate that the attack occurred at 11:21 p.m. *See* ECF 30-5, 30-6, 30-7. He takes issue with this discrepancy.

In addition, Ames argues: "[I]t was also stated that I only suffered from minor injuries." ECF 40 at 2. He contests this characterization of his injuries. In support thereof, he provides the bill for his medical expenses, which totaled $47,898.66. ECF 41 at 3. This document also details the procedures and interventions that Ames required while hospitalized. *Id.* Further, he states that

he has experienced "intense mental trauma" since this incident, including a diagnosis of post traumatic stress disorder.  ECF 40 at 2; ECF 41 at 4.[4]

## II.     Legal Standards

### A.

Ames's claims are predicated on 42 U.S.C. § 1983.  Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any "person" who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g., Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Graves v. Loi*, 930 F.3d 307, 318-19 (4th Cir. 2019); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Baltimore City Police Dep't v. Owens*, 575 U.S. 983 (2015).  However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S.

---

[4] Ames appears to be confused about the current procedural posture of this case.  He asks "the appeals court [to] overrule the lower court decision to dismiss with prejudice."  ECF 40 at 3. Although four defendants were dismissed from the case (State of Maryland, DPSCS, Robert L. Green, and "ALL officer of" MCI-J), ECF 7, ECF 8, the case remains open as to the four remaining defendants, and the court now rules on the defendants' Motion.

823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (Citations and internal quotation marks omitted).

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *Iqbal,* 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. Thus, § 1983 requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983.

**B.**

The Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give

10

notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule

56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Harrods*, 302 F.3d at 244 (internal citations omitted).  Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).  "This is especially true where, as here, the non-moving party is proceeding pro se."  *Putney*, 656 F. App'x at 638.

As noted, Ames filed an "Affidavit of Inquiry Motion to produce Documents."  ECF 39.  He seeks: (1) camera footage; (2) hours worked for defendants Amadi and Oluwatayo; (3) log sheets to determine precise timing of this incident; (4) "any and all material relevant to this case"; (5) "any and all complaints made against correctional officers asleep or not at assigned post"; (6) "all assaults that took place in the made up housing unit in the gym of MCI-J"; and (6) a deposition of MCI-J Captain G. Harris.  *Id.*  In support of his motion, Ames states only that he requests the documents in order "to prepare a defense."  *Id*.

I will construe the motion (ECF 39) as a Rule 56(d) affidavit for discovery.  But, Ames does not proffer any reason why he needs the requested information in order to respond to defendants' Motion.  Nor is it readily apparent that the requested information would establish a genuine dispute of material fact.  In the absence of any information substantiating that the requested information is essential to Ames's opposition, I shall deny the discovery motion.

I am satisfied that it is appropriate to address the Motion as a motion to dismiss for certain defendants, and as one for summary judgment as to others, as this will facilitate resolution of this case. In doing so, I am mindful that Ames is self-represented.  Therefore, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).

However, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).  Moreover, courts cannot ignore a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)).

## C.

A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019);  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley*

*Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Nadendla*, 24 F.4th at 304-05; *Weil*, 918 F.3d at 317-18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, "'naked assertions' of

wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted). Simply put, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, ___ Fed. App'x ___, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 684; *Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Harvey v. Cable News Network, Inc.*, ___ F.4th ___, 2022 WL 4006939 at *6 (4th Cir. Sept. 2, 2022); *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 153, 208 (4th Cir. 2017); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But, "a court is not required to accept legal conclusions

drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated

into the complaint by reference and those attached to the complaint as exhibits."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).  The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]"  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167; *see United States of America English Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, 2021 WL 316267, at *2 (4th Cir. July 27, 2021) (per curiam).  Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."  *Id.*  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true."  *Id.*

In addition, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.  *Goines*, 822 F.3d at 166; *Goldfarb v. Mayor & City Council of Balt.*, 791

F.3d 500, 508 (4th Cir. 2015).  In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."  *Goines,* 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Further, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"  *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

### D.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc*., 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  The Supreme Court has clarified that, under Rule 56(a), not every factual dispute will defeat a summary judgment motion.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).   Thus, to avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law.  *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp*., 890 F.3d 463, 470 (4th Cir. 2018).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat*, 346 F.3d at 525 (alteration in original) (quoting Fed. R. Civ. P. 56(e)).   Indeed, the nonmovant "must rely on more than conclusory allegations,

mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

Summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014). In other words, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Notably, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.     Eighth Amendment – Failure to Protect

### A.

The Eighth Amendment to the Constitution proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825

F.3d 206, 218 (4th Cir. 2016).   Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103.  It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'" *Id.* (citation omitted).  Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that when a state holds a person "against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, 985 F.3d 327, 338-39 (4th Cir. 2021).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97. Because Ames is arguing that the defendants failed to protect him from attack, the deliberate indifference standard is applicable here.

In order to prevail on a claim of failure to protect from violence, Ames must allege, and ultimately establish, that defendants exhibited deliberate or callous indifference to a specific known risk of harm.  *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987).  "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving

standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted).

However, a prison official cannot be found liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).  A two-part inquiry that includes both an objective and a subjective component must be satisfied to establish liability.  *See Raynor*, 817 F.3d at 127.

Objectively, a plaintiff "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury.  *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014).  The objective inquiry requires the court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety."  *Farmer*, 511 U.S. at 834.  Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that the inference was drawn.  *Id*. at 837.  A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may

conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Actual knowledge of a substantial risk does not alone establish liability.  Where prison officials responded reasonably to a risk, they may be found free of liability.  *Farmer*, 511 U.S. at 844.  "In failure to protect cases, prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Raynor*, 817 F.3d at 128 (internal quotation marks omitted) (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)); *see Thompson*, 878 F.3d at 108 ("[P]rison officials are not liable if taking action would endanger their own lives or if the harm occurred despite their reasonable efforts to prevent it.").  Failure to take any reasonable action in an ongoing assault, however, can amount to deliberate indifference.  *See Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (concluding that correctional officers were deliberately indifferent to prisoner's substantial risk of serious harm where correctional officers failed to take reasonable action after prisoner repeatedly informed them that he feared for his safety before he was beaten); *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) (finding no deliberate indifference where unarmed prison officials did not intervene in an armed attack immediately but called for backup).

Here, the record shows, and defendants do not dispute, that Ames suffered a serious physical injury as a result of an assault committed by other inmates.  This satisfies the objective component of the Eighth Amendment analysis.  Thus, liability in this case turns on whether the defendants possessed a sufficiently culpable state of mind such that their actions amounted to deliberate indifference.

There is no evidence in the record, nor any allegation in the Complaint, that Officers Oluwatayo and Amadi knew of and disregarded a known excessive risk to Ames's safety.  Indeed,

the record is devoid of facts demonstrating that they were aware of a serious risk of harm to Ames and disregarded that risk.  For instance, there is no evidence that the assailants had a history of violence, that this type of attack had occurred before, or that Ames was particularly vulnerable to attack.

Further, the record supports that the officers responded reasonably when they observed the attack.  Despite plaintiff's claim that the officers were asleep, Officer Amadi approached the scene and instructed Ames to cease the use of the broomstick he acquired to fend off his assailants, and Officer Oluwatayo called for assistance from other officers.  Officers are not required physically to intervene when it may place them in an unsafe situation.  Therefore, the actions taken by Officers Amadi and Oluwatayo were a reasonable response to the attack Ames faced.

Although the record does not support that Officers Amadi and Oluwatayo were sleeping during the attack on Ames, I shall assume, *arguendo*, the truth of that assertion.  It is of no moment, because such conduct does not amount to deliberate indifference.  Sleeping on the job or failing to conduct regular rounds amounts, at best, to an allegation that the Correctional Officers were derelict in their duties and thus acted negligently.  "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it … [T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences."  *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting" one).

Construing the facts in the light most favorable to plaintiff, the record does not support a finding that the allegations against Officers Amadi and Oluwatayo satisfy the exacting standard of deliberate indifference.  To be sure, Ames suffered a very unfortunate injury.  But, that does not

amount to constitutional liability for Officers Amadi and Oluwatayo.  Therefore, they are entitled to summary judgment.

The other disputes of fact raised in Ames's opposition are not sufficiently material to defeat summary judgment.  Whether the incident began at 11:21 p.m. or 11:45 p.m. does not alter the above analysis that the defendants did not act with the requisite deliberate indifference.  Further, although Ames suffered major injuries following this attack, that factor alone is not enough to impose liability on the officers who were present in the area.  Therefore, summary judgment in favor of Amadi and Oluwatayo is appropriate.

## IV.    Supervisory Defendants

Ames names as a defendant the Warden of MCI-J, Christopher Smith, and the lieutenant on his housing unit, Lt. Olowe.  His claims as to these defendants are connected to the incident by virtue of their status as supervisors and do not include allegations of personal participation in the alleged constitutional violations.

As noted, liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.  It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane*, 355 F.3d at 782 (no respondeat superior liability under § 1983).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a

pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Given the absence of any personal involvement by Warden Smith or Lt. Olowe, they are entitled to dismissal of the claims against them.

## V.      Conclusion

Based on the foregoing, defendants' motion to dismiss or, in the alternative, for summary judgment (ECF 30) is granted. The Complaint is dismissed as to Warden Smith and Lt. Olowe. Summary judgment is granted in favor of defendants Amadi and Oluwatayo.  Ames's "Affidavit of Inquiry Motion To produce Documents" (ECF 39), construed as a Rule 56(d) affidavit for discovery, is denied.

An Order follows.


June 7, 2023                                                    /s/
Date                                          Ellen L. Hollander
                                              United States District Judge